[Cite as *In re C.H.*, 2019-Ohio-4316.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | **:** | **O P I N I O N** |
| C.H., DEPENDENT CHILD | | |
| | **:** | |
| | | **CASE NO. 2018-A-0061** |
| | **:** | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2017 JC 00024.

Judgment: Affirmed.

*Nicholas A. Iarooci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, Ohio 44047-1092 (For Appellee).

*Christopher J. Boeman,* P.O. Box 583, Willoughby, Ohio 44096 (For Appellant).

*Anita B. Staley*, P.O. Box 571, Mentor, Ohio 44061; *Judith Kowalski*, 333 Babbitt Road, Suite 323, Euclid, Ohio 44123 (Guardians ad litem).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Kimberly Malkin, appeals the trial court's judgment granting legal custody of her son, C.H., to a paternal great aunt and uncle. She asserts procedural errors and that the ruling is not in C.H.'s best interest. We affirm.

{¶2} C.H. was born in January 2009. The birth certificate lists Matthew Hines as his father. During C.H.'s first eight years, he lived with appellant's father, and appellant also lived with them most of the time. Shortly before February 2017, C.H. was involved in an altercation on a school bus. Ultimately, appellant refused to allow the police further

access to C.H. Close in time, appellant overdosed on illegal drugs. Her father was home when the overdose occurred, but he did not witness it. Hines and C.H., however, did.

{¶3} Prior to this overdose, appellee, Ashtabula County Children Services Board ("the board"), was aware of another incident where appellant overdosed on illegal drugs. Upon learning of her second overdose, the board filed a complaint for temporary custody of C.H. alleging that he is a dependent child due to appellant's drug abuse and that Matthew Hines is C.H.'s biological father.

{¶4} The day of filing, the trial court issued a pre-disposition judgment awarding temporary custody of C.H. to the board and found probable cause that placement in shelter care was needed to prevent potential physical or emotional harm. Approximately one month later, after an adjudicatory hearing, the trial court found C.H. to be a dependent child and ordered that he remain in the board's temporary custody.

{¶5} Within days of taking temporary custody, the board placed C.H. with his paternal great aunt and uncle, Kristine Hines-Loveland and Chris Loveland. The Lovelands were chosen in part because they reside in the same county as appellant and Hines, completed a home study, provided criminal background checks, and would allow appellant and Hines visitation. C.H. lived with the Lovelands throughout the pendency of the proceedings.

{¶6} On April 6, 2017, the trial court adopted a reunification case plan for both appellant and Hines. Appellant's requirements were to (1) undergo mental health evaluation and follow all recommendations; (2) undergo drug and alcohol evaluation and follow all recommendations; and (3) obtain a steady source of income to provide safe housing for C.H. Similar requirements were imposed on Hines.

2

{¶7} A magistrate conducted a semi-annual review hearing on August 1, 2017 and found neither appellant nor Hines were following the case plan. Although appellant completed a mental health evaluation, she was not following any recommendations. Moreover, appellant had recently tested positive for illegal drugs and did not have a job or separate housing. C.H.'s placement with the Lovelands was therefore continued. Furthermore, given appellant's belligerent behavior at the hearing, the magistrate appointed a guardian ad litem for her.

{¶8} Three months later, appellant filed two pro se pleadings: a complaint for a writ of habeas corpus and a motion for review. In both pleadings, she maintained that C.H.'s removal from her custody was improper because there was no evidence that she placed him in imminent danger or abused or neglected him. A hearing on those issues was scheduled but did not occur due to failure of service.

{¶9} The trial court held an annual review hearing on February 8, 2018. The court found appellant's most recent drug test was positive for methamphetamines and THC. The trial court also found that neither appellant nor Matthew Hines had made any progress on the case plan objectives and that C.H. was doing well with the Lovelands. The board's temporary custody was continued.

{¶10} On the day of the annual review hearing, appellee moved for an order terminating its temporary custody and granting legal custody of C.H. to the Lovelands. In an affidavit accompanying the motion, a caseworker averred that if the requested relief were granted, both appellant and Hines would have more time to comply with the case plan objectives.

{¶11} An evidentiary hearing on the motion to terminate was scheduled for June

19, 2018. Six days before the hearing, appellee amended its motion to terminate, noting that Matthew Hines had not established paternity. The amended motion therefore alleges "John Doe" as C.H.'s unknown father. In an accompanying affidavit, the same caseworker averred that John Doe's identity could not be ascertained and therefore, requested an order for service by publication.

{¶12} The trial court granted the service request, but publication did not appear in the Ashtabula County newspaper until June 20, 2018, one day after the termination hearing.

{¶13} Appellant did not appear at the termination hearing and her pro se habeas corpus petition and motion for review were dismissed. Appellant's counsel, however, participated and cross-examined appellee's witnesses. At the outset of the proceeding, appellee submitted a Statement of Understanding signed by the Lovelands. The trial court asked each of them if they were prepared to assume full responsibility for C.H. and act as his parents. Both answered affirmatively and stated that they would willingly accept custody of C.H.

{¶14} In granting appellee's motion to terminate, the trial court found appellant had not satisfied any of the major objectives of her case plan, including the need to maintain stable employment and housing. The court further found that C.H. had bonded with the Lovelands and was doing well in their home. The trial court awarded legal custody to the Lovelands and terminated appellee's involvement.

{¶15} Appellant asserts four assignments of error for review:

{¶16} "[1.] The trial court abused its discretion when it proceeded with the hearing when it was clear that a necessary party, John Doe, had not been properly served.

4

{¶17} "[2.] The trial court abused its discretion by awarding legal custody of C.H. to the Lovelands without first either appointing C.H. an attorney or ascertaining C.H.'s wishes.

{¶18} "[3.] The trial court abused its discretion in awarding legal custody to the Lovelands when there was insufficient evidence to demonstrate that doing so was in C.H.'s best interest.

{¶19} "[4.] Mother was denied due process by the cumulative effect of the irregularities that were evident at the hearing."

{¶20} Under her first assignment, appellant argues that the judgment awarding legal custody to the Lovelands is void due to invalid service and lack of jurisdiction over "John Doe."

{¶21} Appellant, however, lacks standing to raise the issue. A mother cannot challenge the lack of proper notice to the non-appealing father unless she can demonstrate prejudice. *In re Michaels*, 11th Dist. Lake No. 2001-L-029, 2001 WL 705564, *2 (June 22, 2001); *In re I.J.*, 6th Dist. Lucas No. L-12-1306, 2013-Ohio-1083; *In re Cook*, 3d Dist. Hancock No. 5-98-16, 1998 WL 719524 (Oct. 8, 1998); *In re Kincaid*, 4th Dist. Lawrence No. 00CA3, 2000 WL 1683456 (Oct. 27, 2000); *In re Jordan*, 9th Dist. Summit Nos. 20773, 20786, 2002 WL 121211 (Jan. 30, 2002); *Iden v. Zumbro*, 5th Dist. Licking No. 18-CA-56, 2019-Ohio-1051, ¶ 9-11.

{¶22} Appellant does not argue, much less demonstrate, prejudice to her. Appellant's first assignment is without merit.

{¶23} Under her next assignment, appellant contends that the trial court erred in not determining whether C.H.'s wishes conflicted with the recommendation of the

guardian ad litem and, depending on his preference, potentially appoint C.H. legal counsel.

**{¶24}** Appellant did not, however, object on this basis or request that the trial court inquire of C.H.'s wishes and examine the potential need for appointment of counsel. Accordingly, she is limited to arguing plain error. To constitute plain error the alleged error must have substantially affected the outcome such that but for the error, the outcome would have been otherwise. *State v. Beech*, 9th Dist. Summit No. 29036, 2019-Ohio-120, ¶ 17.

**{¶25}** Appellant has failed, however, to demonstrate that C.H.'s wishes conflict with the recommendation of the guardian ad litem and we cannot speculate. *In Re: N.G.*, 9th Dist. Lorain No. 12CA010143, 2012-Ohio-2825, ¶ 18. Having failed to demonstrate plain error, this assignment lacks merit.

**{¶26}** The third assignment asserts that there is insufficient evidence to support the judgment granting custody to the Lovelands. "'"When a defendant argues that judgment in a civil case is supported by insufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of plaintiff.'" *Lubanovich v. McGlockin,* 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, 2014 WL 2567995, ¶ 8.' *Baaron, Inc. v. Davidson,* 2015-Ohio-4217, 44 N.E.3d 1062, ¶ 13 (9th Dist.)." *Estie Investment Co. v. Braff*, 11th Dist. Lake No. 2017-L-172, 2018-Ohio-4378, ¶ 32.

**{¶27}** "'When a child is adjudicated a dependent child, the juvenile court may as its dispositional order, place the child under the protective supervision or temporary custody of a children services agency, or award legal custody of the child to a third party.'

6

*In re Yates*, 11th Dist. Geauga No. 2008-G-2836, 2008-Ohio-6775, ¶ 29. "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.' R.C. 2151.011(B)(21). Although legal custody is intended to be permanent in nature, R.C. 2151.42(B), it 'is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children.' *In re Memic*, 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, ¶ 24 (citations omitted) * * *." *In re K.Q.*, 11th Dist. Ashtabula No. 2017-A-0060, 2018-Ohio-906, ¶ 15.

{¶28} An award of legal custody to a third party is one of five dispositional orders a juvenile court may impose after the initial dependency determination has been made. R.C. 2151.353(A). In rendering any dispositional order, the focus of the juvenile court's analysis is not whether the child's natural parents are unfit to maintain custody; instead, the court's paramount consideration is the child's best interest and welfare. *In re L.L.S.*, 11th Dist. Portage No. 2016-P-0068, 2017-Ohio-7450, ¶ 21, quoting *In re J.F.*, 11th Dist. Trumbull No. 2010-T-0029, 2011-Ohio-3295, ¶ 39-40. In deciding whether to grant legal custody to a third party under R.C. 2151.353(A)(3), a juvenile court must apply the "best interest" standard delineated in R.C. 3109.04. *In re K.Q.*, at ¶ 16.

{¶29} Unlike termination of parental rights, which requires a finding by clear and convincing evidence, an award of legal custody to a third party requires a finding by a preponderance of the evidence. *In re S.A.*, 11th Dist. Trumbull Nos. 2011-T-0098, 2011-

7

T-0099, and 2011-T-0100, 2012-Ohio-2006, ¶ 25.  Appellate courts review legal custody determinations under an abuse of discretion standard.  *In re L.L.S.*, at ¶ 20.  "* * * '[A]buse of discretion' is [a term] of art, connoting judgment exercised by a court which neither comports with reason, nor the record.  *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).  An abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'  *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶ 15 (8th Dist.)."  *Id.*

**{¶30}**  In *In re S.A.*, this court found the following sufficient to support an award of legal custody to the third parties, the Hogans:

**{¶31}**  "4. TCCS conducted a home evaluation of the Hogans and they were approved.  Furthermore, caseworker, Cathi Beck, stated that she supported the grant of legal custody to the Hogans and had no concerns about the girls' welfare in the Hogans' home.  The girls have been attending school, participating in extracurricular activities, and are generally thriving.

**{¶32}**  "5. Mrs. Hogan expressed her and her husband's continued interest in caring for the girls.  They did not want to see the girls split up.  She made clear she did not oppose the girls' visitation with Ms. Frazier, or L.M.'s with Mr. Marshall.  She indicated a willingness to take the girls to see their mother as often as possible."  *Id.* at ¶ 30-31.

**{¶33}**  Similar evidence was presented in this case.  The guardian ad litem testified to the following.  She visited the Loveland home multiple times and always found it to be in appropriate condition.  The Lovelands care for C.H., and he appears to care for them.  C.H. is comfortable with the Lovelands; and C.H. appears to be thriving in his present environment.  The guardian ad litem further believed the Lovelands would willingly allow

the maternal grandfather to visit C.H. Moreover, the guardian recommended granting legal custody to the Lovelands finding it in C.H.'s best interest. A caseworker for the board testified that she had no concerns about the Lovelands' ability to provide a safe home for C.H.

{¶34} In presenting their Statement of Understanding, the Lovelands acknowledged that by accepting legal custody, they were assuming the same responsibilities as a natural parent. Both also acknowledged that their obligation to C.H. could continue until he became an adult. The evidence therefore is sufficient to establish that the ruling is in C.H.'s best interest.

{¶35} Appellant alternatively asserts that the Lovelands are ineligible for legal custody because there are issues as to whether Matthew Hines is C.H.'s natural father. Appellant appears to argue that the Lovelands must be related to C.H. before they can be granted legal custody. There is no requirement, however, that a person must be related to a child in order to obtain legal custody. Legal custody can be granted to a parent "or to any other person." R.C. 2151.353(A)(3).

{¶36} Appellant has failed to establish that the trial court did not follow the correct legal standard, misapplied the correct legal standard, or based its decision on a clearly erroneous factual finding. The trial court did not abuse its discretion in granting legal custody of C.H. to the Lovelands. The third assignment lacks merit.

{¶37} Under her final assignment, appellant seeks reversal arguing cumulative error during the termination hearing. In addition to restating the arguments in her first three assignments, she asserts two additional arguments. First, she claims that she was denied a fair hearing because the trial court repeatedly allowed appellee to present

9

hearsay testimony.

{¶38} There were a number of occasions where appellee's witnesses attempted to recite what they heard from others. Several times, the trial court granted appellant's counsel's hearsay objection. More importantly, when there was no objection, or the hearsay was admitted over objection, it pertains to whether appellant was progressing on the objectives of her case plan, not C.H.'s best interests. While some inadmissible hearsay was admitted, appellee presented a substantial amount of admissible evidence demonstrating that appellant has failed to comply with the vast majority of the objectives. The admission, therefore, was not prejudicial.

{¶39} Second, appellant maintains that she was not afforded a fair hearing because the guardian ad litem did not submit her final report seven days before the dispositional hearing, as required by Sup.R. 49(F)(1)(c). The Rules of Superintendence are viewed as internal housekeeping rules which do not have the force or effect of procedural rules or statutes; accordingly, violations do not warrant reversal of a decision. *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475, ¶ 31.

{¶40} Appellant's fourth assignment is not well taken.

{¶41} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

10